FIRST NATIONAL BANK OF DENVER v. LOWREY BROS.
ET AL.

FILED FEBRUARY 15, 1893. No. 4474.

1. **Bill of Exceptions**: TIME FOR ALLOWANCE. The cause was tried in the district court on the 17th day of December, 1889, and forty days were given to reduce the exceptions to writing. The term of court adjourned without day December 23, and on the 29th day of the following month the trial judge, on a showing of diligence, granted an extension of thirty days' additional time in which to complete and serve a bill of exceptions. A draft of the bill was served on the attorneys of the successful party on February 19, 1890. *Held*, That the same was presented in time.

2. ———: NOTICE OF APPLICATION TO EXTEND TIME FOR ALLOWANCE UNNECESSARY. No notice of an application to the judge for an order extending the time for preparing and serving a bill of exceptions is necessary.

3. ———: ORDER EXTENDING TIME FOR ALLOWANCE: PRACTICE. On the granting of such an order, the proper practice is to file the same with the clerk of the district court.

4. ———: AMENDMENTS: NOTICE OF PRESENTATION FOR ALLOWANCE. Where no amendments are proposed to a bill of exceptions, no notice of the presentation of the bill to the judge for allowance is required to be served on the adverse party.

5. ———: CERTIFICATION BY TRIAL JUDGE. Certificate of the trial judge attached to the bill in this case, although informal, is sufficient.

6. ———: A bill of exceptions must be filed in the district court of the proper county.

7. **Instructions**: SUFFICIENCY OF EXCEPTIONS. A general exception to instructions, as "to the giving of the above instructions the plaintiff then and there excepted," is insufficient to lay the foundation for their review in the supreme court. Exception should be specifically taken to each paragraph of the charge claimed to be erroneous.

8. **An erroneous instruction** is not cured by merely giving another on the same subject contradicting it.

9. **Instructions:** EVIDENCE. It is reversible error for the court, in its charge to the jury, to give undue prominence to a portion of the testimony by special reference thereto, or to direct the jury what weight shall be given to particular items of the evidence.

10. **Chattel Mortgages:** RETENTION OF POSSESSION BY MORT- GAGOR: PRESUMPTION OF FRAUD. The retention of the posses- sion of personal property by a mortgagor is *prima facie* evidence of fraud, and the burden is cast upon the mortgagee to establish the *bona fides* of the transaction. The presumption of fraud, aris- ing from the want of change of possession of the thing mortgaged, is not conclusive, but may be entirely rebutted by proof of good faith and the absence of an intent to defraud.

11. ———: ———: INSTRUCTIONS. An instruction in a suit between the creditors of the mortgagor and the mortgagee which requires the latter, in addition to proof of good faith and absence of a fraudulent intent, to satisfactorily explain why there was not an immediate delivery of the property and an actual and con- tinued change of possession thereof, is erroneous.

12. ———: BILL OF SALE BY FAILING DEBTOR: FRAUD. A mort- gage or bill of sale given by a failing debtor to secure an honest debt is not fraudulent, although the parties to the transaction knew that the claims of other creditors would be thereby de- feated, provided the fair value of the property pledged as secu- rity does not greatly exceed the amount of the debt, interest, and probable expenses of foreclosure.

ERROR from the district court of Harlan county. Tried below before GASLIN, J.

*Case & McNeny* and *C. C. Flansburg,* for plaintiff in error.

*John P. Maule* and *Morning & Keester, contra.*

NORVAL, J.

This cause was submitted to this court upon a motion to quash the bill of exceptions and upon the errors assigned in the petition in error. We will first consider the ques- tions presented by the motion. Three grounds are assigned for quashing the bill.

First—It was served upon the attorneys for the defendants in error out of time.

Second—It has never been allowed by the trial judge, or ordered made a part of the record in the case, and it does not contain all the evidence.

Third—Because said bill has not been filed in the office of the clerk of the district court.

The record before us shows that the cause was tried to a jury at the December term, 1889, of the district court of Harlan county, and that a verdict and judgment were rendered against the plaintiff in error on the 17th day of December; that forty days from the rising of the court were allowed in which to reduce exceptions to writing; that the said term of court adjourned without day on the 23d day of December, 1889; that on the 29th of the following January the trial judge, on the application of the plaintiff in error, and a showing of diligence, granted an extension of thirty days from that time in which to complete and serve the bill of exceptions; that on the 19th day of February, 1890, a draft of the bill of exceptions was presented to Morning & Keester, attorneys of record for the defendants in error, who declined to propose any amendments thereto, or to examine it, but protested against the signing of the bill by the judge or clerk, on the ground that the same had not been presented to them for examination within forty days from the final adjournment of the court.

It is plain that plaintiff's draft of the bill of exceptions was served upon the adverse parties in sufficient time. Although the forty days given from the adjournment of the term to reduce the exceptions to writing had expired, it was presented before the expiration of the additional thirty days granted by the judge. This is conceded. That the judge, under our statute, had the power to thus extend the time for preparing and serving the bill, there is no room for doubt. That no notice of the application to the judge

for an extension of time was served upon the defendants in error, or their attorney, is immaterial, since such notice is not jurisdictional. This was expressly decided in *McDonald v. McAllister*, 32 Neb., 514.

It is urged that the order of the district judge allowing the extension of time should have been attached to the proposed bill. We regard the proper practice is to file the order with the clerk of the district court, which was done in this case, immediately following the granting of the order, but it was, by inadvertence of the clerk, placed in the files of another cause, on account of which the defendants in error were not aware of the existence of the order until some time afterwards.

It is also claimed no notice of the presentation of the bill to the judge for allowance was served upon defendants in error. Mr. Flansburg, one of the attorneys for plaintiff in error, has filed an affidavit in which he states that he gave notice to the attorneys of the adverse parties of the time of the presenting of the bill to the judge for his signature. Besides, we are not aware of any statute which requires the giving of a notice in such case. It is only when amendments are proposed that notice of the time and place of presenting the bill to the judge for settlement and allowance must be given. (See Code, sec. 311.) In this case no amendments of any kind were suggested.

The second ground for quashing the bill is contradicted by the record. Appended to the bill of exceptions we find the following certificate of the trial judge:

"Febr. 26, 1890. All evidence. True bill. Ordered part of record in this case.    WILLIAM GASLIN,

"*Judge 8th Judicial District, Nebr.*"

The foregoing certificate, although quite brief, we think is sufficient.

Although we are unable to find any indorsement upon the bill showing that the same was filed with the clerk of

the district court, the evidence before us shows that it was
properly filed. Mr. Flansburg, in his affidavit filed in this
court in resistance of the motion, states that "after the
same was allowed and signed by the judge, this affiant
took the said bill of exceptions, personally, to the clerk
of the district court of this (Harlan) county, and saw him,
the said clerk, mark the same filed, and if the same are not
so marked now on the bill of exceptions, said marking has
been erased, or the leaf bearing the same destroyed. That
said bill was filed the second day after it was allowed."
This testimony is in no respect contradicted or denied by
any one. In addition, the clerk of the district court has
attached to the record a certificate, under his hand and offi-
cial seal, which states "that the foregoing is the original
bill of exceptions in said cause and also a true and perfect
transcript of the petition, answer, reply, and instructions
given in said action, as the same are on file and of record
in my office." In view of the facts above stated, and in-
asmuch as there is no evidence before us, tending to show
that the bill of exceptions was not properly filed in the
district court, the third, or last, objection to the bill is
overruled, and the motion to quash, therefore, must be
denied.

All the parties to this suit are creditors of the Alma
Milling Company, a corporation doing business at Alma,
this state. On the 21st day of December, 1888, the mill-
ing company, being indebted to the First National Bank
of Denver in the sum of $10,300, executed and delivered
to the bank a bill of sale upon the property in controversy,
consisting of 1,425 sacks of flour and 500 bushels of wheat,
for the purpose of securing its indebtedness to the bank.
The bill of sale was duly filed in the proper county, on
December 22, 1888, but the bank did not take immediate
possession of the property under its said bill of sale, but
left the property in the possession of the milling com-
pany. On the 27th day of December, 1888, the defend-

ants in error sued out writs of attachment against the
milling company, and placed the same in the hands of L. E.
Allen, the sheriff of Harlan county, for service, who levied
the same upon the flour and wheat covered by said bill of
sale.    The First National Bank of Denver thereupon
brought this suit against the sheriff to recover the posses-
sion of the property.    Before the trial defendants in error
were substituted as defendants in lieu of the sheriff.    The
cause was tried to a jury, who returned a verdict in favor
of the defendants, upon which judgment was rendered.

The record shows that on the trial in the court below
the *bona fides* of the bill of sale was questioned, and this
was the principal question submitted to the jury for deter-
mination.    The defendants claimed that the instrument
was fraudulent as to the creditors of the Alma Milling
Company, inasmuch as the bank had never taken posses-
sion of the property covered by the bill of sale, while the
plaintiff insists that it accepted the bill of sale in good
faith, for the purpose of securing a valid indebtedness,
and without any intention of defrauding others, the credit-
ors of the milling company, or hindering or delaying them
in the collection of their debts.

The giving of the second, eighth, and ninth instruc-
tions requested by the defendants is assigned for error,
which instructions are as follows·

" Second—In making it appear to you that the sale was
made in good faith and without any intent to defraud the
creditors of the Alma Milling Company, it is not enough
for the plaintiff to show you that said Alma Milling Com-
pany owed it a debt, and that said alleged sale was made
to pay or secure that debt.

" This is only one of the things it must show.    It must go
farther and satisfy you that the said sale was made in good
faith and without any intent to defraud the creditors of the
Alma Milling Company, or hinder or delay them in the
collection of their debts against it.

"And they must satisfactorily explain to you why there was not an immediate delivery of said property, and an actual and continued change of possession thereof.

"And if the plaintiff has failed to satisfy you that said sale was made in good faith and without any intent to defraud, hinder, or delay the creditors of the Alma Milling Company in the collection of their claims against it; and if they have failed to satisfactorily explain to you why there was not an immediate delivery of the property and an actual and continued change of possession of the same, you should find for the defendants. Modified as follows: Provided you find from the evidence there was no change of possession of said property, and this instruction is not applicable unless you so find.

"Eighth—So, if in this case you should find from the evidence that the Alma Milling Company was in debt and could not pay its indebtedness in full, and that certain of its creditors were demanding their money and threatened suit if they were not paid, and if you also find that said milling company was owing the plaintiff, and that the plaintiff was not insisting on the payment of its claim, and was not urging that the same be secured, and if you further find that the Alma Milling Company requested plaintiff to accept this bill of sale, and that the same covered all or nearly all of the property of said company, and if you also find that there was not an immediate delivery of said property, and an actual and continued change of possession of the same, but the Alma Milling Company remained in possession of the same, and continued to run its mill and do business as it had previously done, then, and in that case, I instruct you as a matter of law that these things are strong evidence of a secret trust in favor of said Alma Milling Company, and of an intent to hinder and delay its creditors. And if from these facts and circumstances you believe there was such a trust and an intent to hinder and delay the creditors of said company you should find for the defendants.

"Ninth—It makes no difference even if the Alma Milling Company intended eventually to pay all its debts, and it makes no difference if it gave the bill of sale for the purpose of securing what it owed the plaintiff, yet, if you find from the evidence that it was the further intention of the Alma Milling Company in giving the said bill of sale to the plaintiff to hinder and delay its other creditors for a limited period only, and the plaintiff knew this, or knew enough facts to lead a reasonable man to believe such was the intention of the Alma Milling Company, the bill of sale would be void, and you should find for the defendants."

Counsel for defendants in error in their brief insist that these instructions cannot be reviewed by this court, for the reason it does not appear that the giving of these particular instructions was excepted to. The first or original transcript of the record in this case contains copies of the instructions given on the request of the defendants, following which appear these words: "To the giving of the above instructions the plaintiff there and then duly excepted." It must be conceded that this exception, under the numerous decisions of this court, some of which are cited in the brief of counsel, is too general and indefinite to lay the foundation for a review of the instructions. The rule is that each instruction, claimed to be erroneous, must be specifically excepted to. (*Brooks v. Dutcher*, 22 Neb., 644, and cases there cited.) It, however, appears from an amended transcript, filed by plaintiff in error, that it did at the time take an exception to each of the instructions copied above. The objection to our considering these instructions must, therefore, be overruled.

Section 11 of chapter 32, Compiled Statutes, declares that " every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels, by way of mortgage or security, or upon any condition whatever, unless the same be

accompanied by an immediate delivery, and be followed by an actual and continued change of possession, of the thing sold, mortgaged, or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith; and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale, or assignment, that the same was made in good faith, and without any intent to defraud such creditors or purchasers."

By this provision the legislature has made the retention of the possession of personal property, sold or mortgaged by the vendor or mortgagor, merely *prima facie* evidence of fraud, and casts the burden upon the vendee or mortgagee to establish the *bona fides* of the transaction. The presumption of fraud, raised by the statute from a want of change of possession, is not conclusive, but may be entirely rebutted by proof of good faith, and absence of intent to defraud. (*Pyle v. Warren*, 2 Neb., 252; *Robinson v. Uhl*, 6 Id., 328; *Brunswick v. McClay*, 7 Id., 137; *Jackson v. Dean*, 1 Doug. [Mich.], 519; *Hanford v. Artcher*, 4 Hill [N. Y.], 271.)

The section of the statute already quoted is an exact copy of the statute of New York, and an interpretation of it by the courts of that state is entitled to great weight here. The court for the correction of errors of the state of New York, in passing upon the identical question we are considering, in the case of *Hanford v. Artcher, supra*, in the opinion prepared by President Bradish, says: "From the declaration of the statute, that the facts enumerated therein shall be conclusive evidence of fraud, unless it shall be made to appear that the sale or assignment was made in good faith, and without any intent to defraud, the legal inference, as well as that of common sense, is, I think, irresistible, that if it be thus made to appear, those facts shall not be conclusive evidence of fraud; and that the presump-

tion of fraud raised therefrom shall be thus fully rebutted. The statute does not go on to provide that, in addition to proof of good faith and absence of intent to defraud, the party claiming under such sale or assignment shall also be held to show, by reasons to be approved by the court, why there had not been an immediate delivery, and an actual and continued change of possession." We regard this a fair and reasonable construction of our statute. When the vendee or mortgagee establishes both good faith and the absence of fraud, the legal presumption of fraud arising from his failure to take possession of the property is overcome.

By defendants' request No. 2 the plaintiff was not only required to prove good faith and the absence of an intent to defraud, but the jury were told that it "must satisfactorily explain to you why there was not an immediate delivery of said property, and an actual and continued change of possession thereof." The portion of the request just quoted was erroneous, and should not have been given. But counsel for the defendants contend that the error was cured by other portions of the charge, and the instructions, when construed together or considered as a whole, properly state the law. A misstatement of the law in one paragraph of the charge of the court cannot be cured by a correct instruction, for the reason the jury would not know which one to follow. (*Wasson v. Palmer*, 13 Neb., 376; *Ballard v. State*, 19 Id., 609; *Fitzgerald v. Meyer*, 25 Id., 77.)

The defendants' eighth request is objectionable. It not only gave undue prominence to certain portions of the evidence to the disparagement of the rest, but the jury were advised that certain things, particularly mentioned in the request to charge, "are *strong* evidence of a secret trust." It was the province of the jury, and not the court, to determine what weight should be given to the different items of evidence. The instruction was prejudicial to the plaintiff. (*Gillet v. Phelps*, 12 Wis., 392; *Wilcox v. Young*,

33 N. W. Rep. [Mich.], 765; *People v. Ah Sing*, 59 Cal., 400.)

It was error to give the defendants' ninth request. The bill of sale was given to secure the *bona fide* indebtedness of the milling company to the bank. The leaving of the property in the possession of the milling company placed the burden upon the bank to overcome the legal presumption that the transaction was fraudulent, and to establish that the security was taken in good faith, and without any intent to defraud. In this state a failing debtor has the right to give one creditor adequate security upon his property to secure a *bona fide* indebtedness to the exclusion of others, and if the same is taken in good faith, without any fraudulent purpose on the part of such creditor, the transaction will not be void, even though the debtor intended thereby to hinder and delay his other creditors in the collection of their debts and the person secured had knowledge of such purpose. A party who purchases property of an insolvent debtor with notice that the purpose of the seller is to hinder and defraud his creditors, will not be protected as against such creditors, although he may have paid for the property its full value. But the same rule does not apply here. A mortgage given by a failing debtor to secure an honest debt is not in violation of any principle of law, nor is it fraudulent, although the parties knew that the claims of other creditors would be thereby defeated. (*Dudley v. Danforth*, 61 N. Y., 626; *Ford v. Williams*, 3 B. Mon. [Ky.], 556; *Worland v. Kimberlin*, 6 Id., 608; *Covanhovan v. Hart*, 21 Pa. St., 495; *Bear's Estate*, 60 Id., 436; *Walker v. Marine Nat. Bank*, 98 Id., 578.)

For the foregoing reasons the judgment of the district court is reversed and set aside, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.